UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SONIA PRICE, on her own behalf, and on behalf
of her minor children, MARQUISE TORRES and
BRIONNA TORRES,

                Plaintiffs,

     v.

ROCHESTER HOUSING AUTHORITY, et al.,

                Defendants.
_____

<u>DECISION & ORDER</u>

04-CV-6301P


**PRELIMINARY STATEMENT**

        Plaintiff Sonia Price has filed suit against the Rochester Housing Authority ("RHA"), Thomas F. McHugh, the Executive Director of RHA, and Michael Tonovitz, Director of Leased Housing for RHA, seeking a declaratory judgment, permanent injunctive relief and monetary damages on behalf of herself and her minor children. (Docket # 1). Pursuant to 28 U.S.C. § 636(c), the parties have consented to have a United States magistrate judge conduct all further proceedings in this case, including the entry of final judgment. (Docket # 9). Currently before this Court is Price's motion for partial summary judgment. (Docket # 14). For the reasons discussed below, Price's motion is granted.

        In support of her motion for summary judgment, Price has submitted a Statement of Material Facts Not in Dispute as required by Rule 56.1(a) of the Local Rules of Civil Procedure (the "Local Rules"). (Docket # 14-3). RHA has failed to submit a statement of

undisputed facts, nor has it raised any objections to the facts asserted by Price. Thus, the factual assertions submitted by Price are accepted as true.[1] *See* Local Rule 56.1(c) (providing that all uncontroverted material facts set forth in the moving party's statement will be deemed admitted); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted").

## FACTUAL BACKGROUND

According to the uncontested record before this Court, Price is a recovering substance abuser who was referred by the Salvation Army to participate in the Shelter Plus Care program. The Shelter Plus Care program was created by Congress in the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11403 *et seq.*, to provide rental housing assistance to homeless persons with disabilities, "primarily, those persons who are seriously mentally ill, have chronic problems with alcohol, drugs, or both, or have acquired immunodeficiency syndrome [AIDS] and related diseases and the families of such persons" (the "Shelter Plus Care Program" or the "Program"). 42 U.S.C. § 11403. Locally, the Program is administered by defendant RHA. (Docket # 14-3 at ¶ 2).

Several years prior to the events in question, Price participated in the Section 8 Housing Choice Voucher program (the "Section 8 Program"), a rent subsidy program also administered by RHA. (Docket # 14-3 at ¶ 23). *See* 42 U.S.C. § 1437f. As a participant in the

---

[1] During oral argument of this motion on January 10, 2006, RHA advised that it did not dispute the facts set forth by plaintiff.

Section 8 Program, Price received a monthly rental subsidy, which was paid directly to her landlord. The Section 8 Program requires its participants to comply with certain rules and regulations known as "Family Obligations." (Docket # 14-3 at ¶ 24). One of these obligations is that Section 8 participants must notify RHA prior to moving from a residence for which they are receiving a rental subsidy. Failure to provide such notification constitutes a program violation and may result in the participant's termination from the program. (Docket # 14-3 at ¶ 27). In the case at bar, RHA alleges that in early 2002, while participating in the Section 8 Program, Price vacated her apartment without notifying RHA. (Docket # 14-3 at ¶ 26, Ex. J).

Although both the Section 8 Program and the Shelter Plus Care Program are federally funded by the United States Department of Housing and Urban Development ("HUD"), they are distinct programs, administered separately and are subject to different regulatory requirements. The Section 8 Program is administered by the HUD Office of Public and Indian Housing, while the Shelter Plus Care Program is administered by the Office of Community Planning and Development. (Docket # 14-3 at ¶ 38). In addition, unlike the Section 8 Program, the Shelter Plus Care Program requires a "supportive services" component and is coordinated jointly with a social services provider, such as the Salvation Army. (Docket # 14-3 at ¶ 39).

By statute, RHA (as the local administrator of the Shelter Plus Care Program) is authorized to terminate a Program participant if he or she violates Program requirements provided that RHA follows "a formal process that recognizes the rights of individuals receiving such assistance to due process of law. 42 U.S.C. § 11403f(a) and (b). HUD regulations governing the administration of the Shelter Plus Care Program specify that "at a minimum" the process must consist of:

3

>   (1)  Written notice to the participant containing a clear statement of the reasons for termination;
>
>   (2)  A review of the decision, in which the participant is given the opportunity to present written or oral objections before a person other than the person (or a subordinate of that person) who made or approved the termination decision; and
>
>   (3)  Prompt written notice of the final decision to the participant.

24 C.F.R. § 582.320(b).  Moreover, the regulations provide that housing assistance should only be terminated "in the most severe cases." *Id.*

Price was referred to the Shelter Plus Care Program by the Salvation Army on October 8, 2003 and was accepted into the Program on November 1, 2003.  Shortly thereafter, Price received a notice of termination from RHA dated November 20, 2003.  (Docket # 14-3 at ¶¶ 2-3, Ex. D).  According to Price, the notice did not clearly state the reasons for the termination, the right to request a hearing to challenge the termination or the right to request a reasonable accommodation in connection with that decision.  (Docket # 14-3 at ¶¶ 44-45, Ex. D).

Upon receipt of the termination notice, Price retained counsel.  By letter from her counsel dated December 22, 2003, Price requested a hearing and notice of the regulation or provision relied upon by RHA to terminate Price's rental subsidy.  (Docket # 14-3 at ¶ 47, Ex. E).  Two days later, RHA issued an amended termination notice advising Price of her right to request a hearing within ten days.  The amended notice also indicated that the reason for the termination was because Price "was not eligible for rental assistance at the time of [the] initial interview."  (Docket # 14-3 at ¶48, Ex. F).  On December 28, 2003, Price again requested a hearing.  (Docket # 14-3 at ¶ 49).

Meanwhile, by letter dated January 8, 2004, Price was notified by her landlord that her rent had not timely been paid and that her tenancy would be terminated if payment were not promptly received. (Docket # 14-3 at ¶ 6, Ex. G). Prior to the hearing, Price's counsel made repeated requests that Price's rental subsidy be reinstated pending the outcome of the hearing and that her prior violation of the Section 8 requirements be disregarded as a reasonable accommodation of her disability pursuant to the Federal Fair Housing Act. (Docket # 14-3 at ¶¶ 8-9, 53, 62). Price was never evicted from her apartment.[2]

A hearing was conducted before RHA Hearing Officer Michael Reifenstein, Esq. on February 3, 2004. During the hearing, RHA advised Price's counsel that her requests for a reasonable accommodation and for the continuation of the subsidy pending the outcome of the hearing had been denied. (Docket # 14-3 at ¶¶ 64-65). On February 18, 2004, Hearing Officer Reifenstein issued a written determination confirming the termination of Price's Shelter Plus Care subsidy. (Docket # 14-3 at ¶ 10, Ex. J). According to Reifenstein's determination, because Price had previously been terminated from the Section 8 Program, RHA acted within its authority in deciding to terminate Price from the Shelter Plus Care program. (Docket # 14-3, Ex. J).

Price initiated this action on June 29, 2004. (Docket # 1). She alleges that when RHA made its decision to terminate her from the Shelter Plus Care program, it did so without considering "whether an alteration of its policies would be appropriate as a 'reasonable accommodation' in light of the fact that her alleged non-compliance was related to her substance addiction, and that failure to extend such consideration would impede her ongoing recovery."

---

[2] At some later date, plaintiff's rental assistance was reinstated to the date of termination. (Docket # 18 at ¶ 3).

5

(Docket # 1 at ¶ 1).  Specifically, Price asserts that defendants violated her due process rights under 42 U.S.C. § 1983 and 42 U.S.C. § 11403 *et seq*. (the McKinney-Vento Homeless Assistance Act) and that they discriminated against her on the basis of her disability in violation of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Amendments Act) and Section 504 of the Rehabilitation Act.  (Docket # 1).  Price's Complaint seeks a declaratory judgment, permanent injunctive relief and monetary damages on behalf of herself and her minor children.

## DISCUSSION

### I. Scope of the Pending Motion

At the time the pending motion was filed, Price sought summary judgment on two grounds.  First, Price moved for summary judgment with respect to defendants' failure to establish formal procedures to provide participants in the Shelter Plus Care Program with adequate notice and a hearing prior to termination from the program.  On this issue, Price sought judgment requiring RHA to "establish written procedures regarding admissions to and termination from the Shelter Plus Care program."  (Docket # 14-2 at 24).  Second, Price sought summary judgment based upon defendants' failure to afford her a reasonable accommodation of her disability in conjunction with her termination from the Shelter Plus Care Program.  As to that grounds, Price sought injunctive relief directing RHA "to establish procedures to assure that persons with disabilities in the Shelter Plus Care program will be given appropriate consideration of requests for reasonable accommodation necessary for them to fully and successfully participate in that program, including advising them of the right to request such consideration in

connection [with] determinations relating to their admission to, participation in, and termination from that program." (Docket # 14-2 at 25).

In response to Price's motion, defendants have submitted the affidavit of Michael Tonovitz, the Director of Leased Housing for RHA. (Docket # 18). Tonovitz affirms that since undertaking his position, he has conducted a "complete overhaul" of the policies relating to various programs administered by RHA and has implemented "all of the necessary policies and procedures . . . and staff have been appropriately trained [as to those policies and procedures]." (Docket # 18 at ¶¶ 2, 4). Specifically, Tonovitz has submitted a copy of RHA's revised Shelter Plus Care Administrative Plan reflecting those revised policies and procedures,[3] and plaintiff agrees that the Plan is generally acceptable.[4] Thus, her first grounds for summary judgment is moot.

With respect to the second grounds, that too has been substantially narrowed. At oral argument on this motion, defendants made clear their agreement with the following: Shelter Plus Care Program participants are entitled (i) to request reasonable accommodations in connection with a termination decision; (ii) to receive some notice of their right to request an accommodation; and, (iii) to receive some impartial review of a decision denying a requested accommodation. The sole issue remaining for determination on this motion is whether due process requires that the notice of a right to request a reasonable accommodation needs to be given in the termination letter itself. Plaintiff maintains that it does; defendants disagree,

---

[3] Counsel for defendants represented at oral argument that the Administrative Plan was adopted by RHA's Board of Commissioners on November 16, 2005 and is publically available.

[4] The one caveat articulated by plaintiff's counsel is the issue presented in the second grounds for summary judgment.

contending that other measures it has implemented are sufficient to satisfy RHA's due process notice obligations.[5]

## II. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reaching this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant*

---

[5] Although defendant's opposition papers suggest that they may be willing to consider inclusion of some language regarding accommodations in RHA's termination letters, RHA's counsel clarified at oral argument that they are currently opposed to the inclusion of any such language.

*v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

>As the Second Circuit has explained:
>
>[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . .  It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**III.   Analysis**

As stated earlier, the issues presented in this summary judgment motion have narrowed to one:  whether the Due Process Clause of the Fourteenth Amendment requires that termination letters issued to participants in the Shelter Plus Care Program include a notice advising them of their right to request an accommodation of a disability in connection with that decision.  While Price has not expanded upon the meaning of an accommodation in this context, her argument reveals that one such accommodation could be a requested reversal of the termination.  In her case, for example, she maintains that the rule disqualifying a participant from the Shelter Plus Care Program if the participant has previously been terminated from another

Section 8 program should have been disregarded because her previous violation, which occurred years earlier, resulted from her substance addition disability.  Other accommodations presumably could include a modification of RHA's policies as they pertain to a particular participant, a deferral of the termination decision for a period of time or a change in the manner in which a termination hearing is customarily conducted.  Price further argues that notice is imperative because of the composition of the Program participants, noting that they are defined by the statute as primarily persons with disabilities, namely, persons with mental illnesses, alcohol or drug dependencies, AIDS and "related diseases."  *See* 42 U.S.C. § 11403.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *quoted in Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 11 (1978).  As the Supreme Court has repeatedly affirmed, due process is a flexible doctrine that requires "such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  *Accord*, *e.g.*, *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. at 14 n.15; *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

The touchstone for the due process analysis demanded by the issue presented here is the Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  There, the Court explained that determination of the dictates of due process in a particular setting generally requires consideration of three factors:

> First the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). *See Memphis Light, Gas and Water Div.*, 436 U.S. at 17 ("Our decision in *Mathews* . . . provides a framework of analysis for determining the 'specific dictates' of due process").

The private "interest" at issue in this case is Price's interest in the Shelter Plus Care rental subsidy. That interest plainly is a protectible property interest deserving of due process protection. *See Ressler v. Pierce*, 692 F.2d 1212, 1217 (9th Cir. 1982) (Section 8 Program participant has property interest in the benefits they are receiving sufficient to trigger due process protection). *See also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *Eidson v. Pierce*, 745 F.2d 453, 459-64 (7th Cir. 1984) (distinguishing between Section 8 recipients, who have protectible property interests, and Section 8 applicants, who do not); *Carter v. Belmont Shelter Corp.*, 2005 WL 578165 (W.D.N.Y. 2005) (accepting that recipients of uninterrupted Section 8 benefits have a property interest in those benefits). Although Price had only been a Shelter Plus Care Program participant for a short while (three weeks) when she received the first termination notice, it is uncontested that she had been accepted into the Program and had been receiving assistance benefits during that period.

(Docket # 14-3 at ¶¶ 2-3, 6). Thus, Price has demonstrated that she had a protectible property interest in the housing benefits sought to be terminated by RHA.

The private interest at stake – the continued receipt of rental housing assistance – is assuredly a weighty one. *See Ressler v. Pierce*, 692 F.2d at 1217 ("having determined that [the participant] has a sufficient "property" interest in Section 8 benefits to be entitled to due process protection, this court need not look further at the *nature* of [the participant's] interest but must focus primarily on its *weight*") (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)). It cannot be gainsaid that every individual has a strong interest in maintaining housing. *Cf. Memphis Light, Gas and Water Div.*, 436 U.S. at 18 (the "interest is self-evident"; acknowledging that utility service is a "necessity of modern life" and that its discontinuance "may threaten health and safety"). Nor can it be gainsaid that the population served through the Shelter Plus Care Program has an especially strong interest in maintaining those benefits. The purpose for which the Program was enacted by Congress is to provide housing assistance to persons who were previously homeless, "primarily persons who are seriously mentally ill, have chronic problems with alcohol, drugs, or both, or have [AIDS] and related disabilities." 28 U.S.C. § 11403. Should housing assistance cease for those individuals, the risk that they would return to homelessness is real and far from insubstantial. *See Vance v. Housing Opportunities Comm'n of Montgomery Co.*, 332 F. Supp. 2d 832, 843 (D. Md. 2004) ("[A] primary objective of the McKinney Supportive Housing Program is to make homeless individuals, including those with psychiatric handicaps, more self-sufficient"). The societal interest in minimizing that risk is reflected in HUD's judgment that termination from the Program should be reserved only for the "most serious cases." *See* 24 C.F.R. § 582.320.

The second *Mathews* consideration is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.  Defendants argue that the risk of an erroneous deprivation is minimal because RHA officials fully understand their obligation to consider whether a Program participant may be entitled to an accommodation.  In this respect, they emphasize that the revised Shelter Plus Care Administrative Plan contains the following provision concerning termination from the Program:

> As per 24 CFR Part 582.32, a person who violates the conditions of participation may be terminated from the program.  However, in accordance with regulations, RHA will exercise judgement and examine all extenuating circumstances and consider whether or not a reasonable accommodation is appropriate in determining when violations are serious enough to warrant termination, so that assistance is terminated only in the most severe cases.

(Docket # 18, Ex. A at 7).  In other words, they maintain that notification of the right to request an accommodation in a termination letter is unnecessary because RHA officials consider the issue of accommodation even in the absence of a specific request to do so.

No reason is apparent in the record to question the good faith of the RHA officials in discharging their obligations under either the statute, applicable regulations or the Administrative Plan.  Rather, I perceive the risk of an erroneous deprivation to derive from the absence of procedures in connection with the termination decision to ensure input from the participant herself about her disability and/or the manner in which it may be accommodated. HUD and the Department of Justice has issued a Joint Statement dated May 14, 2004, entitled

13

"Reasonable Accommodations Under the Fair Housing Act" that underscores the importance of this input in housing decisions.[6]  That statement provides:

> When a housing provider refuses a requested accommodation because it is not reasonable, the provider should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs without a fundamental alteration to the provider's operatives and without imposing an undue financial and administrative burden.  If an alternative accommodation would effectively meet the requester's disability-related needs and is reasonable, the provider must grant it.  An *interactive process* in which the housing provider and the requester discuss the requester's disability-related need for the requested accommodation and possible alternative accommodations is helpful to all concerned because it often results in an effective accommodation for the requester that does not pose an undue financial and administrative burden for the provider.

(Emphasis added).

The benefit of such an "interactive process" is to ensure that the Program administrator, here RHA, has complete and accurate information about the nature of the disability, as well as the possible measures to accommodate those disabilities.  While some disabilities may be apparent, others plainly are not.  Even as to those that are, additional information about a disability and how it affects a participant's abilities may be relevant to the question of an accommodation.  In addition, RHA cannot be expected to envision all possible accommodations, nor should they be.

For these reasons at the very least, a process that ensures input from the Program participant should minimize the risk of an erroneous termination decision.  Defendants argue that the policies and procedures already in place at RHA ensure that dialogue.  They explain that

---

[6] The statement is publically available on the Department of Justice's website, www.usdoj.gov.

participants are advised of their right to request reasonable accommodations of any disabilities at the time of their acceptance into the Program and annually thereafter during required yearly recertifications. While I do not discount the importance of these notices, I am dubious that they are sufficient to inform participants of their right to seek an accommodation of or in connection with a termination decision. Such notices may be adequate in other settings, but here the participants consist of those already recognized as being in need of supportive social services. Moreover, they include those with mental illnesses and chronic substance abuse problems. It does not seem reasonable to assume that those participants will be sufficiently familiar with their rights concerning accommodations to recall them, let alone to understand that they pertain to termination decisions.

The final *Mathews* consideration is the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335. Undeniably, RHA's function in facilitating housing for a community that has traditionally lived at the societal and economic margins is a significant one. To best serve the interests of that population, RHA should not be burdened by unnecessary administrative procedures or costs that threaten to delay the delivery of housing assistance to those who need it most. I am mindful that the Program's funding is not unlimited and is inadequate to reach all who would benefit from it.

RHA argues that to require the requested notice in termination letters would impose a substantial burden on the agency, which RHA estimates to be in excess of $1,000 per

case.[7]  Naturally, there is no way to estimate the number of participants who would request an accommodation in connection with a termination decision.  Of course, the direct expense of including additional language in the termination letter would be *de minimus* at most.

Although requiring the requested notice certainly would impose some financial and administrative burden on RHA, I am not persuaded that it would be as substantial as RHA opines.  Price has made clear that she is not requesting, nor does she expect, RHA to conduct any additional hearings with respect to any denials it makes of requested accommodations.  While defendants concede that the law must afford participants the right to seek impartial review of any denials, Price agrees that such review may occur during the course of a termination hearing.  I see no legal bar to proceeding in that manner either and thus do not find any substantial costs associated with additional hearings.

I agree with RHA that the time to reach a final determination regarding termination may be prolonged to some degree by the notice.  Once a participant requests an accommodation, RHA may choose to contact the participant to discuss or review the matter further; it may elect to conduct its own investigation of the request.  That review and investigation may prove to delay a final decision.  If the final decision is to proceed to termination, the delay will inevitably impose costs on RHA that exceed those that it now bears.  Of course, if the final decision is to grant an accommodation and forego termination, the costs can hardly be considered *unduly* burdensome.

---

[7] That estimate was provided by counsel at oral argument; no explanation was provided as to the breakdown of the expenses subsumed in that estimate.

Balancing the three *Mathews* considerations leads me to conclude that due process requires RHA to include language in termination letters issued to participants in the Shelter Plus Care Program notifying them of the right to request a reasonable accommodation of any disability in connection with the termination decision. The additional burden and expense that will result from this decision is justified by the need to ensure that Program participants understand their legal right to request an accommodation. Ignorance or confusion concerning that right as it relates to termination is a genuine risk considering the class of persons served through the Shelter Plus Care Program. *See Mathews*, 424 U.S. at 349 ("all that is necessary [to comply with due process] is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard'") (quoting *Goldberg v. Kelly*, 397 U.S. at 268-69)). *See also Vance v. Housing Opportunities Comm'n of Montgomery Co.*, 332 F. Supp. 2d at 843 ("Due process . . . entitle[s] [a participant in the McKinney Supportive Housing Program] to appropriate solicitude"). That ignorance or confusion could result in the return to homelessness, a result that may be avoided by a reasonable accommodation.

Accordingly, I grant plaintiff's motion for summary judgment on the issue of whether the Fourteenth Amendment requires RHA to revise its Shelter Plus Care Program termination letters to advise participants of their right to request a reasonable accommodation. At this stage, I see no need to dictate the precise language to be used, other than to note that it must be clear, easy to understand and "reasonably calculated" to inform the class of participants served by the Shelter Plus Care Program of their rights. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 314 (articulating due process requirement that notice be "reasonably calculated" to inform).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment (**Docket # 14**) is **GRANTED**. Defendants shall have thirty (30) days from the date of this Decision and Order to revise RHA's termination letters to include the required notice.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                                      MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated:  Rochester, New York
          September  29 , 2006